ACCEPTED
01-14-00805-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/11/2015 12:00:00 AM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00805-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/10/2015 10:03:05 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
## FOR THE FIRST JUDICIAL DISTRICT
## OF TEXAS AT HOUSTON

## IN THE INTEREST OF A.L.W. and A.N.W., Children

## A.L.T., Appellant

v.

## TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee

On Appeal from the 313th District Court
Harris County, Texas
Trial Court Cause No. 2013-05425J

## ORIGINAL BRIEF OF APPELLANT A.L.T.

**WILLIAM M. THURSLAND**
**TBN 20016200**
**440 Louisiana St., Ste. 1130**
**Houston, TX 77002**
**713-655-0200 x 105; Fax: (713) 655-9035**
**Email: wmthursland@hotmail.com**

**ATTORNEY FOR APPELLANT, A.L.T.**

**ORAL ARGUMENT REQUESTED**

The names of all parties and counsel to this appeal are:

A.L.T., Appellant:

| At Trial | On Appeal: |
|---|---|
| Ryan J. Mitchell | William M. Thursland |
| Attorney At Law | Attorney At Law |
| TBN: 24053369 | TBN 20016200 |
| P.O. Box 1570 | 440 Louisiana St., Ste. 1130 |
| Houston, TX 77251-1570 | Houston, TX 77002 |
| Tel: 832-534-2542; | Tel: 713-655-0200; x 105 |
| Fax: 832-369-2919 | Fax: 713-655-9530 |

The Texas Department of Family and Protective Services, Appellee:

| At Trial: | On Appeal: |
|---|---|
| Amelia Strickling | Sandra D. Hachem |
| Assistant County Attorney | Sr. Assistant Harris County Attorney |
| TBN 24062183 | TBN 08620460 |
| 1019 Congress, 15Th Fl. | 1019 Congress, 15th FL. |
| Houston, TX 77002 | Houston, TX 77002 |
| Tel: 713-274-5220; | Tel: 713-274-5246; |
| Fax: 713-437-4700 | Fax: 713-437-4700 |

| A.L.W. & A.N.W., Children: | A.L.W., Alleged Father at Trial: |
|---|---|
| Michelle Bush | Oliver Sprott, Jr. |
| Attorney at Law | Attorney at Law |
| TBN: 24036295 | TBN: 18971700 |
| 14027 Memorial Dr., #105 | 2323 Caroline |
| Houston, TX 77079 | Houston, TX 77004 |
| Tel: 281-460-8486; | Tel: 281-313-6800; |
| Fax: 713-513-5451 | Fax: 713-659-2812 |

Unknown Father:

Joseph Wade Prasifka
Attorney At Law
TBN: 24034832
P.O. Box 658, Houston, TX  77001-0658
Tel.: 713-816-2102; Fax: 281-392-5383

## REQUEST FOR ORAL ARGUMENT

Appellant requests oral argument.

## RECORD REFERENCES

Clerk's Record:

The Clerk's Record consists of one (1) volume. It is referred to herein as CR followed by the volume and page number(s).

Reporter's Record:

The court reporter's record consists of two (2) volumes.  The trial testimony and exhibits are found in the first volume.  It is referred to as (RR) followed by the volume, page and line number(s).  The exhibits are identified by the offering party and exhibit number.  The testimony adduced at the hearing held pursuant to this Court's order dated March 12, 2015 is referred to as (RR-SUPP) followed by the page and line numbers

Statutory Citation References:

Unless otherwise indicated, all statutory references made herein refer to the Texas Family Code.

## TABLE OF CONTENTS

IDENTIFICATION OF PARTIES AND COUNSEL                                    i

REQUEST FOR ORAL ARGUMENT                                                i

RECORD REFERENCES                                                        ii

TABLE OF CONTENTS                                                    ii

TABLE OF AUTHORITIES                                                 iii

STATEMENT OF THE CASE                                               1

ISSUES PRESENTED:                                                    2

ISSUE ONE:     DID TRIAL COUNSEL RENDER INEFFECTIVE
               ASSISTANCE OF COUNSEL

ISSUE TWO:     WAS THE EVIDENCE LEGALLY AND FACTUALLY
               SUFFICIENT TO SUPPORT THE TERMINATION OF
               APPELLANT'S PARENTAL RIGHTS UNDER
               §161.001(1)(D) & (E)

ISSUE THREE:   WAS THE EVIDENCE LEGALLY AND FACTUALLY
               SUFFICIENT TO SUPPORT THE TERMINATION OF
               APPELLANT'S PARENTAL RIGHTS UNDER
               §161.001(1)(N)

ISSUE FOUR:    WAS THE EVIDENCE LEGALLY AND FACTUALLY
               SUFFICIENT TO SUPPORT THE TERMINATION OF
               APPELLANT'S PARENTAL RIGHTS UNDER
               §161.001(1)(O)

ISSUE FIVE:    WAS THE EVIDENCE LEGALLY AND FACTUALLY
               SUFFICIENT TO SUPPORT THE TERMINATION OF
               APPELLANT'S PARENTAL RIGHTS UNDER
               §161.001(2)

STATEMENT OF FACTS                                                  3

SUMMARY OF ARGUMENT                                                 7

ARGUMENT:                                                           10

Standard of Review                                                  10

ISSUE ONE: Authorities & Argument:                          11

ISSUE TWO: Authorities & Argument:                          24

ISSUE THREE: Authorities & Argument:                        30

ISSUE FOUR: Authorities & Argument:                         32

ISSUE FIVE: Authorities & Argument:                         40

PRAYER                                                      45

CERTIFICTE OF COMPLIANCE                                    45

CERTIFICATE OF SERVICE                                      46

## TABLE OF AUTHORITIES

### Federal Cases

*Bell v. Cone,* 556 U.S. 449, 129 S.Ct. 1769 (2009)                        13

*Burdine v. Johnson*, 262 F3d 336 (5th Cir. 2001)                          21

*Childress v. Johnson*, 103 F3d 1221 (5th Cir. 1997)                    13, 19

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)    7, 12, 13, 18

*United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984)      7, 16,18

*Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388 (1982)                 10

### STATE CASES

*Avery v. State,* 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.]        26
1997, no writ)

*Elizondo v. Krist*, 415 S.W.3d 259 (Tex. 2013)                             44

*Ex Parte Burdine*, 901 S.W.2d 456, 467 (Tex. Crim. App. 1995)             20

*Holick v. Smith*, 685 S.W. 2d 18 (Tex. 1985)    10

*Holly v. Adams,* 544 S.W. 2d 367 (Tex. 1976)    42

*In re A.A.A.*, 265 S.W.3d 507 (Tex. App. – Houston [1st Dist.]    37, 38
2008 pet. denied)

*In re A.S.,* 261 S.W. 3d 76, 83 (Tex. App. - Houston [14th Dist.]    25, 26, 30
2008 Pet. denied)

*In re B.G.*, 317 S.W.3d 250, 256 (Tex. 2010)    21

*In re C.H.,* 89 S.W. 3d 17 (Tex. 2002)    42, 43

*In re C.L.*, 304 S.W.3d 512, 514 (Tex. App. – Waco 2009, no pet.)    39

*In re C.L.C.*, 119 S.W.3d 382 (Tex. App. - Tyler 2003, no pet.)    25

*In re E.C.R.,* 402 S.W.3d 239 (Tex. 2013)    37, 38, 43

*In re E.N.C.* 384 S.W.3d 796 (Tex. 2012)    26, 29, 37, 43, 45

*In re D.N.*, 405 S.W.3d 863 (Tex. App. – Amarillo 2013, no pet.)    37

*In re D.T.*, 34 S.W.3d 625 (Tex. App. – Ft. Worth 2000, pet. denied)    30, 32

*In re D.W.*, No. 01-13-00880-CV (Tex App. – Houston [1st Dist.]    32
April 11, 2014, no pet.)(memo op.)

*In re G.M.*, 596 S.W. 2d 846 (Tex. 1980)    11

*In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002)    10

*In re J.O.A.,* 283 S.W. 3d 336 (Tex. 2009)    28

*In re J.R.*, 171 S.W.3d 558, 569 (Tex. App. - Houston [14th Dist.]    25
2005, no pet.)

*In re J.R.W.*, No. 01-14-00442-CV, (Tex. App. – Houston    39
[1st Dist.] Nov. 26, 2014, no pet.)(memo op.)

*In re J.T.G.*, 121 S.W.3d 117 (Tex. App. - Ft. Worth 2003, no pet.)      24, 25

*In re J.W,* 152 S.W. 3d 200 (Tex. 2006)      25

*In re: K.F.*, 402 S.W.3d 497 (Tex. App. – Houston [14th Dist.]      34
2013, pet. denied)

*In re K.W.*, 138 S.W.3d 420 (Tex. App. – Ft. Worth 2004,      31
pet. denied)

*In re M.C.G.*, 329 S.W.3d 674 (Tex. App. – Houston      43
2010, no pet.)

*In re: M.L.G.J.*, 14-14-00800-CV, 2015 WL 1402652 *14 (Tex. App.      24
– Houston [14th Dist.] March 24, 2015, no pet.)(memo. op.)

*In re M.R.*, 243 S.W.3d 807 (Tex. App. – Ft. Worth 2007, no pet.)      44

*In re M.S.* 115 S.W. 3d 534 (Tex. 2003)      12, 13, 14, 15

*In re R.R.*, 209 S.W. 3d 112 (Tex. 2006)      42

*In re S.N.*, 287 S.W. 3d 183 (Tex. App. – Houston [14th Dist.]      37
2009, no pet.)

*In re S.R.L.,* 243 S.W.3d 232 (Tex. App. - Houston [14th Dist.]      42
2007, no pet.)

*In re V.V.,* 349 S.W.3d 548 (Tex. App. - Houston [1st Dist]      24
2010, pet. denied)

*Jordan v. Dossey,* 325 S.W. 3d 700, 713 (Tex. App. – Houston      26
[1st Dist.] 2010, pet. denied)

*Liu v. DFPS*, 273 S.W.3d 785, 795 (Tex. App. – Houston [1st Dist.]      32
2008 no pet.

*New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206      16

(Tex. App. - Houston [1st Dist.] 2013, pet. denied)

*Ruiz v. DFPS.,* 212 S.W.3d  804 (Tex. App. - Houston [1st Dist.]      11
2006, no pet.)

*Texas Dept. of Human Servs. v. Boyd*, 727 S.W. 2d 531, 533 (Tex. 1987)     24, 25

## Statutes

| | |
|---|---|
| Tex. Family Code Ann. § 101.007 | 10 |
| Tex. Family Code Ann. § 107.013 | 11 |
| Tex. Family Code Ann. § 107.0131 | 13, 22, 23 |
| Tex. Family Code Ann. § 161.001(1) | 11 |
| Tex. Family Code Ann. § 161.001(2) | 11, 40 |
| Tex. Family Code Ann. § 161.001(D) | 24 |
| Tex. Family Code Ann. § 161.001(E) | 24 |
| Tex. Family Code Ann. § 161.001(N) | 30 |
| Tex. Family Code Ann. § 161.001(O) | 32 |
| Tex. Family Code Ann §262.201(b) | 32, 38 |
| Tex. R. Civ. Procedure 120 | 17 |
| Tex. R. Civ. Procedure 120 | 17 |
| Tex. R. Civ. Procedure 251 | 16 |
| Tex. R. Civ. Procedure 252 | 16 |

## CONSTITUTION

U.S. CONST. 6th AMEND.     18

_____

**IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT
OF TEXAS AT HOUSTON**

_____

**IN THE INTEREST OF A.L.W. and A.N.W., Children**

_____

**A.L.T., Appellant**

**v.**

**TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
Appellee**
_____

**On Appeal from the 313th District Court
Harris County, Texas
Trial Court Cause No. 2013-05425J**
_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

A.L.T., appellant (also called "mother"), respectfully submits her original brief in the above styled and numbered appeal.

STATEMENT OF THE CASE

On October 2, 2013, the Department of Family and Protective Services ("DFPS") filed its *Original Petition For Protection of a Child, For Conservatorship and Termination in Suit Affecting the Parent-Child Relationship* wherein it alleged, inter alia., that A.L.W., a female born on February 17, 2001 and her sister A.N.W., a female

1

born on September 23, 2002, were physically abused by their step-mother.[1] (CR 4-

On September 2, 2014, the case was tried before the Honorable Glenn Devlin without a jury. The trial court found the evidence sufficient to support the termination of appellant's parental rights under §161.001(1)(D), (E), (N) and (O). It also found that termination of her parental rights was in the children's best interest. DFPS was appointed as the child's sole managing conservator. On September 16, 2014 the Final Decrees For Termination were signed.[2] (CR 100-118)

A.L.T. filed a timely notice of appeal and appellate counsel was appointed to represent her. (CR 127 & 108)

Appellate counsel filed an *Anders* brief and motion to withdraw on December 12, 2014. After finding at least three arguable grounds for appeal, the Court of Appeals in an order dated March 12, 2015 recommended that counsel's motion to withdraw be granted and that new appellate counsel be appointed. In a hearing held on March 18, 2015, the trial court appointed new appellate counsel and found that appellant was still indigent. (RR-Supp; p. 5 & 7)

<u>ISSUES PRESENTED</u>

<u>ISSUE ONE</u>:  DID TRIAL COUNSEL RENDER INEFFECTIVE ASSISTANCE OF COUNSEL

<u>ISSUE TWO</u>:  WAS THE EVIDENCE LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TERMINATION OF

---

[1] The clerk's record does not contain an order appointing DFPS as the children's temporary managing conservator. Nevertheless, the permanency orders reflect that the appointment was made.
[2] The parental rights of the alleged father, A.L.W. were also terminated and he has not appeal.

2

APPELLANT'S PARENTAL RIGHTS UNDER §161.001(1) (D) & (E)

ISSUE THREE:    WAS THE EVIDENCE LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS UNDER §161.001(1)(N)

ISSUE FOUR:    WAS THE EVIDENCE LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS UNDER §161.001(1)(O)

ISSUE FIVE:    WAS THE EVIDENCE LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS UNDER §161.001(2)

STATEMENT OF FACTS

Prior beginning testimony, mother's appointed trial counsel made an oral motion for continuance. He explained A.L.T. was living and working in Iowa and "thought trial was next month." He further explained that her number is one that changes "quite frequently" but he was able obtain it that morning from DFPS. He then spoke to his client who advised him she "has progressed a little further in her plan than what CPS believes." Counsel concluded his argument by stating, "[m]y trial was in a month." The motion was then denied. (RR p. 6 & p. 7; L. 1-11)

DFPS then offered the following relevant exhibits that were admitted without objection: (RR p. 7; L. 15-25)

DFPS #2 - Birth certificates for both children showing that they and their mother were born in Illinois.

DFPS #5 - Drug test results from samples collected on October 16, 2013

3

indicating appellant tested positive in her hair sample for cocaine (366 pg/mg), benzoylecgonine (28 pg/mg), marihuana (>25.0), marihuana metabolite (0.1 pg/mg) and negative for all drugs on her urine sample.

DFPS #6 - Drug test results from samples collected on November 20, 2013 indicating appellant tested positive in her hair sample for cocaine (2413 pg/mg), benzoylecgonine (616 pg/mg), marihuana (>50.0), marihuana metabolite (0.2 pg/mg) and negative for all drugs on her urine sample.

DFPS #7 - Appellant's Family Service Plan ("FSP").

The DFPS caseworker, Cherena Mills ("Mills"), was the only witness. She testified that both children had been with the paternal grandmother in Chicago since May 28th. She agreed with DFPS counsel who said "[v]ery well there." (RR p. 8; L. 9-19)

In a series of unobjected to leading questions Mills agreed with her trial counsel that appellant "failed to complete her services" although she completed "one of the things." Mills has not received "any indication [mother] has completed any other services." She further agreed A.L.T. has not visited her children "consistently throughout the pendency of this case" although she last visited around the end of July; and, "before that she had not visited them in a long time."[3] (RR p. 9)

Mills asked the court to terminate mother's parental rights "based on her failure to do services" and "constructive abandonment of the children." To the best of her

---

[3] Upon DFPS' request the trial court took judicial notice of all orders in its file. (RR p. 9; L. 12-15)

4

knowledge, she has not provided any support for the children. (RR p. 10; L. 1-9)

Mills opined it was in the best interest to terminate mother's parental rights because she "has not shown the stability to care for the children" and "they're in an adoptive placement" that is "willing to provide them a safe and stable home free of physical abuse." (RR p. 10; L. 10-19)

The children came into care because of "physical abuse of [A.N.W.]." (RR p. 10; L. 20-22)

On cross-examination, Mills testified the children were in the father's custody when the abuse occurred. He took them from the grandmother with her permission and brought them to Houston. His girlfriend, Tara Tew Plummer ("Plummer)[4], "beat" the children when they were in Houston. Mother was making court appearances at the beginning of the case. However, Mills did not remember the Judge saying that "due to family restraints (sic)" mother was excused from attending court hearing. (RR p. 11-12 & p. 13; L. 1-4)

Mills is "not sure" if appellant is "not well off financially" and she repeatedly asked her to send information about her finances. Mother complied with her request to send the certificate showing completion of parenting classes. Mills last spoke to her around August 20th and advised her of the September 2nd trial date. Mother said she "could not make it because of her job." Mills did not explain to her "the ability to relinquish her rights to the children." (RR p. 13; L. 6-25 & p. 14; L. 1-9)

---

[4] Mills never identified her by name but the removal affidavit refers to her as Tara Tew Plummer. (CR 21-27)

5

Mills explained that DFPS was seeking to terminate mother's rights as opposed to "PMC and things like that" because she did not complete "all the courses;" moved to Iowa; and "initially tested positive for drugs" in October 2013. DFPS does not have any later drug tests because appellant resides in another state and for that reason as well she must pay for her own services. (RR p. 14; L. 10-25)

When asked again why it was better to terminate appellant's rights where she was the "non-offending parent as opposed to doing PMC," Mills responded the "kids have been staying with their grandmother most of their lives" and she is "prepared to adopt them." The children want to be with the grandmother; they consider her their mother; and, they "have a relationship with their mom." Finally, Mills agreed with her counsel that appellant "tested positive for cocaine and marihuana in October and November of 2013." (RR p. 15-16)

Closing arguments were succinct:

Ms. Strickling: Asking for (d), (e), (n), and (O) on the mother; ..."

The Court: Okay. Court finds by - - -

Mr. Mitchell: Brief argument, Judge.

The Court: Yes.

Mr. Mitchell: We're asking the Court to terminate on (n) grounds - - - sorry (o) grounds, Judge, only, in light of the circumstances surrounding this whole case."

(RR p. 17)

## SUMMARY OF THE ARGUMENT

6

The record of the entire trial proceeding consists of twelve and a half, double spaced pages. When the appellant's oral motion for continuance and the closing arguments are excluded the entire record consists of only nine pages. Mills was the only witness. The process terminating mother's parental rights resembled a summary proceeding rather than a trial on the merits.

In her first issue, A.L.T. argues her trial counsel was ineffective. Based on the brevity of the record and her counsel's obvious deficiencies, the Court can conclude that she was constructively denied the assistance of counsel at trial performance. Therefore, the *Cronic* presumption of prejudice is applicable. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984)

However, even if the Court declines to apply the *Cronic* presumption, it is clear appellant was denied the effective assistance of counsel under the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) Given the number and gravity of counsel's professional errors there is a reasonable probability that the outcome would have been different; i.e. "a probability sufficient to undermine confidence in the outcome." *Id*. at 2068

Among the professional errors the record reveals are counsel's lack of familiarity with the relevant facts; his failure to maintain contact with his client; and, his inability to make objections. Some failures also constitute violations of the duties imposed by

§107.0131 on appointed counsel. This section must be considered in analyzing appointed counsel's effectiveness.

The evidence supporting the endangerment findings is based on rank speculation. There is no proof that mother knew or should have known that the father would fail to protect their daughters from his girlfriend. While there is evidence that she tested positive for drugs on her hair follicle samples at the beginning of the case, there is no evidence to explain those results. For instance, when she last used them, the level of usage and the frequency. Given that she was negative on the urine tests and the children were not living with her at the time of removal such information is very relevant when considering the endangerment evidence.

Similarly, the evidence is insufficient to support the subsection (N) finding. The record reveals that rather than constructively abandon her children; mother who lives in Iowa visited them at the end of July. The trial was held on September 2, 2014. She spoke to Mills on August 20th and provided her with the certificate that showed she completed parenting classes. She did not attend trial because she though it was scheduled for the following month.

In regard to the subsection (O) finding, the record does not contain any order that "specifically" states the actions appellant must take to obtain the return of her children. When the trial court took judicial notice of the orders in its file, there is no order in the record that meets the specificity requirement of subsection (O).

8

Moreover, under this subsection DFPS must prove by clear and convincing evidence that the child was removed from the parent for abuse or neglect. The fact that the court granted it temporary managing conservatorship ("TMC") is one factor that informs an analysis of this element. Nevertheless, the standard of evidence to grant TMC is "a person of ordinary prudence and caution." In this case, mother was living in another state and the children were removed due to abuse inflicted on them by Plummer. As noted above, there was no evidence that she was aware of Plummer's aggressive nature or that she knew father would fail to protect them.

Mills' testimony regarding what appellant was required to do is stretchy at best. She merely stated mother failed to do all her services except for parenting classes. On the face of this record, appellant's argument that the evidence is insufficient to support the subsection (O) finding should be sustained.

Finally, the evidence pertaining to the best interest finding is based almost exclusively on Mills' opinions and conclusions. There were very few facts that relate to the *Holly* factors. Mother's positive drugs test results at the beginning of the case can be considered as a factor in determining if termination is in the children's best interest. However, that fact alone, where the record is silent as to the many other factors, would no create a firm belief or conviction that it is in the children's best interest to terminate their mother's parental rights.

In conclusion, the Court should reverse the judgment terminating appellant's parental rights to A.L.W. and A.N.W.

ARGUMENT

Standard of Review:

The natural right existing between a parent and a child is of such a degree as to be of constitutional dimensions. *Santosky v. Kramer*, 455 U.S. 745, 758-759, 102 S.Ct. 1388, 1397-98 (1982) See also *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)(The involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights.) As a result, appellate courts strictly scrutinize termination proceedings and involuntary termination statutes in favor of the parent. *Id.* at 20-21

Due to the severity and permanency of terminating a parent's parental rights the burden of proof is heightened to the clear and convincing evidence standard. *In re J.F.C.*, 96 S.W.3d 256, 265-266 (Tex. 2002) This standard is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." §101.007

In conducting a legal sufficiency review the court must consider "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a reasonable belief that its finding was true." *Id.* at 266 It assumes the fact finder resolved disputed facts in favor of its findings if a reasonable fact finder could do so. The court disregards evidence that a reasonable fact finder could have disbelieved or found to be incredible. If the court determines that a reasonable fact finder could not form a firm belief or conviction that the allegations were true, then it must conclude that the evidence is legally insufficient *Id.* at 266

In determining factual sufficiency, the court considers the entire record, including disputed evidence, to determine whether the evidence is such that a factfinder could reasonably have formed a firm belief or conviction, about the truth of the allegation sought to be established. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* at 266-67

To prevail in a termination case, DFPS must prove by clear and convincing evidence that the parent committed one or more of the acts or omissions specifically listed under §161.001(1) and that termination is in the child's best interest. §161.001(2) Proof of one element does not relief the petitioner from establishing the other. *Ruiz v. DFFS*, 212 S.W.3d 804, 812 (Tex. App. - Houston [1st Dist.] 2006, no pet.)

DFPS has the burden of proof as to all grounds and elements of its case. Appellant has no burden of proof. *In re G.M.,* 596 S.W.2d 846, 847

ISSUE ONE:    DID TRIAL COUNSEL RENDER INEFFECTIVE
                        ASSISTANCE OF COUNSEL

Applicable Legal Standard:

In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, an indigent parent is entitled to court appointed counsel. §107.013(a)(1).  The statutory right to counsel necessarily embodies the right to effective counsel.  The Supreme Court adopted the *Strickland* standard used to evaluate effective assistance of counsel in criminal cases to similar claims in parental rights

11

termination cases.  *In re M.S.*, 115 S.W. 3d 534, 544-545 (Tex. 2003)

The *Strickland* standard established a two-prong analysis for evaluating ineffective assistance of counsel claims.  The defendant must first show that counsel's performance was deficient and then that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. at 697, 104 S. Ct.. at 2064

In evaluating trial counsel's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and was based on sound trial strategy.  *In re M.S.*, 115 S.W.3d at 545  To determine if in a particular case counsel's performance was deficient, the reviewing court primarily focus on whether he performed in a reasonably effective manner; that is, whether the errors made by counsel were so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment.  Counsel's performance falls below acceptable levels of performance when the representation is so grossly deficient as to render the proceedings "fundamentally unfair."  *Id.* at 545  The parent has the burden of showing show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 549

Moreover, the parent must identify the specific errors or omissions committed by counsel and show how they failed to meet reasonable and professional standards. *Strickland* 466 U.S. at 689, 670

In regard to the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding

would have been different." The term "reasonable probability means "a probability sufficient to undermine confidence in the outcome." The Court further explained "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland* 466 U.S. at 693, 694, 104 S.Ct. at 2068

Thus a presumption of prejudice may be warranted if an indigent parent is denied actual or constructive assistance of counsel at a critical stage of litigation. In such circumstances no specific showing of prejudice is required because the "adversary process itself is presumptively unreliable." *United States v. Cronic*, 466 U.S. at 659 and *Strickland* 466 U.S. at 692, 104 S.Ct. at 2067

In those cases, the reviewing court can dispense with the prejudice inquiry. The crucial question in assessing a right to counsel claim is whether the defendant asserts he received incompetent counsel or none at all. In the later case the two-prong deficient performance standard applies, in the former prejudice is presumed. *Childress v. Johnson,* 103 F3d 1221, 1228-1229 (5th Cir. 1997)

The Supreme Court reiterated these principles in *Bell* where it held that a "trial would be presumptively unfair" if defense "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." In those cases prejudice to the defendant is presumed. *Bell v. Cone*, 556 U.S. 449, 559-560; 129 S.Ct. 1769, 1776 (2009)

In addition, §107.0131 imposes specific duties on a parent's attorney ad litem.

Among those duties are the following: Counsel "shall" (A) interview the parent, each person who has significant knowledge of the case; and the parties to the suit; (B) investigate the facts of the case; (C) ensure competent representation at hearings, mediations, pretrial matters, and the trial on the merits; obtain and review copies of all court files in the suit during his representation; and, (G) meet before each court hearing with the parent, unless, (ii) the court on a showing of good cause, authorizes the attorney to comply by conferring with the parent, as appropriate, by telephone or video conference.

Relevant Evidence:

Appellant's counsel made an oral motion for continuance because his client who was living and working in Iowa thought the trial was scheduled for the next month. In support of the motion counsel argued his client's "number . . . changes all the time" and based on his conversation with her that morning "she has progressed a little further in her plan than what CPS believes." (RR p. 6-7)

Counsel made no objections to the DFPS trial exhibits and failed to object on direct examination when DFPS trial counsel asked Mills virtually only leading questions.

In contrast, counsel's cross-examination consisted of mostly open-ended questions that revealed his knowledge of the pertinent facts was superficial as illustrated by the following exchange:

Q. And the mother was actually in Chicago, sent her kids down to live with the father - - or father took the kids from the mother, correct? Sorry.

A. From the grandmother.

Q. Took the kids from the grandmother without mother's knowledge.

A. The kids were staying with the grandmother . . . at the time . . .
A. The grandmother allowed them to go with the father.

Q. Without the mother's permission.

A. I'm not sure. I could not say.    (RR p. 11-12; L. 1-4)

After establishing that the father's girlfriend "beat" the children and that mother was making court appearances at the beginning of the case, counsel asked, "[a]nd due to the family restraints (sic) excused from the Court hearings as well, correct?" Mills replied, "not to my knowledge" and despite being at the prior hearings, she did not recall, "that being said." Likewise, Mills was "not sure" if appellant was "not well off financially" although she asked her "repeatedly" to send financial information. (RR p. 12-13)

Cross-examination further revealed that Mills spoke to A.L.T. around August 20th and informed her of the correct court date. Mother told her she could not attend due to her job. There were no other drug test results because mother was living in another state and advised she had to pay for "her services in Chicago." (RR p. 14)

Counsel also established that the decision to send the children to the grandmother was both a safety and a financial issue; it was better to terminate appellant's rights even as a "non-offending parent" because the children have stayed with the grandmother most of their lives; and, the children have been safe "in the situation where [they] lived with

15

the grandmother and the mother comes over to visit and co-parent." (RR p. 15)

At closing counsel was "asking the Court to terminate . . . on (o) grounds . . . only, in light of the circumstances surrounding this whole case." (RR p. 17)

Argument & Analysis

Appellant contends that on the face of this record an appellate court can conclude counsel's performance was deficient. She further contends that prejudice can be presumed because trial counsel "entirely failed" to subject the State's case to "meaningful adversarial testing," In those circumstances, prejudice is presumed because "it is unlikely that the defendant could have received the effective assistance of counsel." *U.S. v. Cronic*, 466 U.S. at 654 & 659, 104 S. Ct. 2044 & 2047

However, even if prejudice cannot be presumed, the record establishes that A.L.T. was prejudiced.

Counsel's Deficient Performance:

The first prong of the *Strickland* test is shown by the following specific errors and omissions committed by counsel:

1. He made an oral motion for continuance even though TRCP 251 mandates that no continuance shall be granted, "except for sufficient cause supported by affidavit." In addition, if the continuance is sought for want of testimony, as in this case, TRCP 252 requires the proponent to show the testimony is material and that he has used due diligence to obtain the testimony. *New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 217 (Tex. App. – Houston [1st Dist.] 2013, pet. denied)

16

2.  On November 20, 2013, counsel filed a general denial "subject to proper service on the Respondent." (CR 28)  By filing a general denial mother made a voluntary appearance and thereby waived service of process.  TRCP 120. Moreover, the way to contest a court's jurisdiction is by making a special appearance. TRCP 120a.

3.  He failed to maintain contact with his client as evidenced by his representation to the court that she thought trial was the next month.  He obtained her number from Mills who spoke to appellant as recently as August 20.   Although A.L.T.'s telephone number may have changed frequently as asserted by her counsel, Mills was apparently able to maintain contact with her.

4.  He failed to object to DFPS' leading questions on direct examination and on cross-examination he asked only asked open-ended questions.

5.  Counsel was not familiar with the facts.  For example, he was unclear if the children were taken from the grandmother or mother.  He asked Mills to confirm that the court excused mother from attending further hearings.  When she stated she did not remember the court ever doing so, counsel had no contradicting proof such as an order or transcript of a prior hearing.  The fact that counsel asked only open-ended questions also shows his basic lack of knowledge regarding the pertinent facts.

6.  The case against his client was based primarily on conclusions, beliefs and speculation.  The shocking brevity of the record underscores how few facts were actually elicited.  Counsel failed to question the basis of conclusory statements such as the children are doing well; A.L.T. has not visited "consistently throughout the

17

pendency of this case;" has "not shown the stability for the children;" the children consider grandmother their mother; and, they "have a relationship with their mom."

7. Rather than point out the lack of facts adduced at trial to support the termination findings, counsel in his one sentence closing asked the court to terminate his client's parental rights on (O) grounds only.

*Cronic* Presumption:

The *Strickland* court specifically noted the Sixth Amendment right to the assistance of counsel is not satisfied by merely having a lawyer present with the accused at trial because "it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland*, 466 U.S. at 685, 104 S.Ct. at 2063 The court further explained the purpose of the guarantee of counsel in our adversary system of justice is "to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." Any deficiencies in counsel's performance must be prejudicial to the defense. However, in those circumstances where there is actual or constructive denial of counsel prejudice can be legally presumed. In those cases where counsel was ineffective but did not entirely fail to subject the State's case to meaningful adversarial testing, a prejudice inquiry must be conducted. *Id*. at 687, 692, 104 S.Ct. at 2064, 2067

Mother contends that her counsel failed to subject DFPS' case to any "meaningful adversarial testing" and for that reason the *Cronic* presumption of prejudice should be applied. *Unites States v. Cronic*, 466 U.S. 648, 659, 104 S,Ct. 2039, 2047 See also

*Childress v. Johnson*, 103 F.3d 1221, 1228 (5th Cir. 1997)("a constructive denial of counsel occurs when the defendant is deprived of the guiding hand of counsel")

Counsel's testing of the case against appellant consisted of establishing that Plummer "beat" the children when they were in the father's care. He also inquired why as the "non-offending parent" DFPS was asking to terminate her rights as opposed to "PMC and things like that." The first point was already established by the admission of the FSP under the paragraph entitled "Reasons For Child Protective Services Involvement." (DFPS #7)

With respect to the second point, Mills cited several reasons: mother did not complete services, moved to Iowa; children staying with the grandmother "most of their lives;" who is willing to adopt; and, she initially tested positive for drugs. There were no follow up questions; such as, are they bonded to the mother; how long have they actually lived with mother and/or grandmother; what is the condition of the grandmother's home; and why did grandmother give permission to the father to bring them to Houston where his girlfriend physically abused them.

Other questions counsel asked illustrate his complete ignorance of his client's situation and, due to his failure to acquaint himself with the relevant facts, his total reliance on Mills' responses. To cite some notable examples, his assertion that appellant was excused from subsequent court appearances was refuted by Mills; his representation that A.L.T. was unaware of the correct trial date was similarly refuted by her testimony, he elicited, that Mills told her the correct date but she could not attend due to her job;

and, his leading question "is it true the mother. . . is not well off financially" also elicited a prejudicial response when Mills answered, she was not sure because despite numerous requests appellant never forward her financial information.

At one point it appeared counsel even abdicated his responsibility to communicate with appellant by asking Mills if she had explained to his client "the ability to relinquish her rights to the children." (RR p. 14; L. 7-9)

This case falls squarely into that narrow range of cases where prejudice must be presumed.  As in *Childress*, the court appointed lawyer in this case never investigated the facts or apparently discussed the applicable law with his client.  Although counsel was present his role "was essentially passive." *Id*. at 1226 & 1228-1229 (constructive denial, such as where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing is the difference between "shoddy representation" and "no representation at all.")  The record firmly establishes that trial counsel entirely failed to subject DFPS' case to any meaningful adversarial testing.  For that reason prejudice must be presumed.

In the infamous sleeping lawyer case, the State of Texas argued successfully in the state courts that even though counsel slept though parts of the capital murder trial prejudice could not be presumed because he di not entirely fail to test the prosecutions case.[5] The federal courts soundly rejected this argument.  A defendant is not required to explain how having counsel would have altered the outcome of a specific case.  The

---

[5] Three justices dissented and found that prejudice must be presumed under *Strickland* and *Cronic. Ex Parte Burdine*, 901 S.W.2d 456, 467 (Tex. Crim. App. 1995)

20

court explained: "Unconscious counsel equates to no counsel at all. . . When we have no basis for assuming that counsel exercised judgment on behalf of his client during critical stages of the trial, we have insufficient basis for trusting the fairness of that trial and consequently must presume prejudice." *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001)

The Second *Strickland* Prong:

Both *Strickland* and *Cronic* teach that the purpose of the Sixth Amendment is to ensure a defendant has the assistance of counsel necessary to justify reliance on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067 and *Cronic,* 104 S. Ct. at 2046 ("[The right to] effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.")

In regard to the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result would have been different." However, the *Strickland* Court expressly noted that this does not mean a defendant must "show that counsel's deficient conduct more likely than not altered the outcome of the case." Rather a reasonable probability means "a probability sufficient to undermine confidence in the outcome." The Court stated, a proceeding can be rendered unreliable, and hence the proceedings itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome. *Strickland*, 104 S. Ct. at 2068 See also *In re B.G.*, 317 S.W.3d 250, 256 (Tex. 2010)(focus for the prejudice inquiry is whether counsel's mistakes were so serious as to

21

deny the defendant a fair and reliable trial)

Applying those principles to this case, it is clear there is a reasonable probability that counsel's ineffective representation rendered the trial result unreliable. For starters, his client was not present because she believed the trial would be held the following month. There is no reasonable explanation as to why he did not attempt to communicate with A.L.T. when the trial date was set at the last permanency hearing. Even if he did not have her current telephone number, at a minimum, he should have procured her address when she appeared in court. That way he could have, at least, contacted her by mail or possibly email. Instead he relied on Mills – who apparently did not have the same difficulty maintaining contact with A.L.T. – to obtain her number the morning of trial.

Counsel's failure to fulfill the mandates of §107.0131 is also informative when conducting an analysis under the second *Strickland* prong because it imposes specific duties on an indigent parent's attorney. Here counsel shirked those duties in several ways.

While he might have interviewed appellant, there is no indication he interviewed the father or the grandmother who is a person with significant knowledge of the case. Moreover, his cross-examination of Mills reveals he did not thoroughly investigate the facts of the case as shown by his open-ended questions.[6] The record confirms, he did

---

[6] §107.0131 permits a parent's attorney to conduct discovery. This provides another tool to investigate the facts of the case. However, in this case, there is no indication counsel availed himself of this tool.

not meet with mother before the trial. Nor does it indicate that the court authorized him to confer with her by telephone or videoconference. In short, the goal of §107.0131 to "ensure competent representation . . . at trial" was thwarted in this proceeding.

As noted above, counsel failed to cross-examine Mills regarding her conclusory statements and affirmative responses to leading questions. He ceased to be mother's advocate and instead merely acquiesced in terminating her parental rights. This fact was amply demonstrated at closing. Rather than argue, as appellant does here, that the evidence is legally and factually insufficient to support both the predicate and best interest termination findings, he asked the court to just terminate his client's rights on (O) grounds. In particular, his failure to argue against the endangerment findings is perplexing given the glaring lack of evidence to support those finding. Similarly, he should have pointed out the best interest finding was supported, for the most part, by Mills' opinions and conclusions but little probative evidence.

Conclusion:

The observation made by Justice Jennings five years ago has unfortunately proven to be prophetic:

If allowed to stand, the majority's en banc opinion will not only encourage trial courts to (1) constructively deny parents their statutory right to counsel in parental termination cases and (2) terminate parental rights on less than clear and convincing evidence in summary proceedings, it will make the practice inevitable.

In re V.V., 349 S.W.3d 548, 577 (Tex. App. – Houston [1st Dist.] 2010, pet. denied)(J. Jennings, dissenting)

This case illustrates that for far too many indigent parents the statutory right to

23

competent representation remains unfulfilled. Nevertheless, it also presents the Court with any opportunity to help redress this injustice. For the reasons stated above, the Court should find that A.L.T. is entitled to a new trial based on her counsel ineffectiveness.[7]

ISSUE TWO:  WAS THE EVIDENCE LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS UNDER §161.001(1)(D) & (E)

Applicable Legal Standard

The evidence pertaining to subsections (D) and (E) is interrelated because both focus on endangerment. Therefore, for convenience, the endangerment termination findings are addressed in one point of error. *In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App. - Ft. Worth 2003, no pet.)

Both subsections use the term "endanger." Endangerment is defined as "to expose to loss or injury; to jeopardize." Although "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Texas Dept. of Human Servs. v. Boyd*, 727 S.W. 2d 531, 533 (Tex. 1987)

To support a subsection (D) finding the evidence must show that the parent "knowingly placed or knowingly allowed the child to remain in conditions or

---

[7] Justice Christopher, concurring, recently commented on the quality of the lawyering in another parental termination trial by noting, "it was a tough call [for the trial judge] because none of the parties presented much-needed evidence for the judge." *In re: M.L.G.J.*, 14-14-00800-CV, 2015 WL 1402652 *14 (Tex. App. – Houston [14th Dist.] March 24, 2015, no pet.)(memo. op.)

24

surroundings which endanger the physical or emotional well-being of the child."

§161.001(1)(D) To sustain a subsection (E) finding, the evidence must establish that the

parent "engaged in conduct or knowingly placed the child with persons who engaged in

conduct which endangers the physical or emotional well-being of the child."

§161.001(1)(E)

A subsection (D) inquiry focuses on the "child's living environment rather than

the parent's conduct, though parental conduct is certainly relevant to the child's

environment." *In re A.S.,* 261 S.W. 3d 76, 83 (Tex. App. - Houston [14th Dist.] 2008,

writ denied) Living conditions that are merely "less than ideal" do not support a finding

under this section." *Boyd,* 727 S.W. 2d at 533  The relevant time period is before DFPS

removes the child. *In re J.R.,* 171 S.W.3d 558, 569 (Tex. App. - Houston [14th Dist.]

2005 no writ) The parent need not have certain knowledge that an actual injury is

occurring but must at least be aware of the potential for danger to the child in such an

environment and must have disregarded that risk. *In re C.L.C.,* 119 S.W.3d 382, 392

(Tex. App. - Tyler 2003, no pet.)

Under subsection (E) the danger must arise solely by the parent's actions or failure

to act.  The inquiry focuses on whether evidence exists that the child's physical or

emotional well-being is endangered by parental conduct, including acts, omissions or

failure to act. *In re J.W,* 152 S.W. 3d 200, 205 (Tex. 2006)  A termination finding must

be based on more than a single act or omission and requires a voluntary, deliberate and

conscious course of conduct by the parent. *In re J.T.G.,* 121 S.W.3d at 125

The cause of the endangerment must be the direct result of the parent's conduct alone and must be the result of a conscious course of conduct rather than a single act or omission. *In re A.S.* 261 S.W.3d at 83 Thus, the relevant inquiry is whether evidence exists that a parental course of conduct endangered the child's physical or emotional well-being. *Jordan v. Dossey,* 325 S.W. 3d 700, 713 (Tex. App. – Houston [1st Dist.] 2010, pet. denied) Evidence of a parent's past conduct, including criminal history, may be relevant if it shows a conscious course of conduct occurring both before and after a child's birth. *Avery v. State,* 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ)

The Department bears the burden of producing evidence concerning the engendering conduct and establishing that it was part of a voluntary course of conduct that endangered the child's well-being. *In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012)

<u>The Evidence:</u>

The following evidence pertains to the analysis of the endangerment findings:

Mills agreed with her counsel that appellant "tested positive for cocaine and marihuana in October and November of 2013." DFPS does not have any later drug tests because appellant lives in another state. (RR p. 14-15)

The drug test results from samples collected on October 16, 2013 show appellant tested positive in her hair sample for cocaine (366 pg/mg), benzoylecgonine (28 pg/mg), marihuana (>25.0), marihuana metabolite (0.1 pg/mg) and negative for all drugs on her urine sample. DFPS #5

26

The results from samples collected on November 20, 2013 show she tested positive in her hair sample for cocaine (2413 pg/mg), benzoylecgonine (616 pg/mg), marihuana (>50.0), marihuana metabolite (0.2 pg/mg) and negative for all drugs on her urine sample. DFPS #6

The children came into care because of "physical abuse of [A.N.W.].[8]" They were in the father's custody when the abuse occurred. He took them from the grandmother with her permission and brought them to Houston. His girlfriend "beat" the children when they were in Houston. (RR p. 11-12)

She asked the court to terminate mother's parental rights "based on her failure to do services" and "constructive abandonment of the children." (RR p. 10)

Analysis & Argument:

The evidence supporting the endangerment findings is paltry and certainly fails to satisfy the clear and convincing standard. In fact, Mills did not even request the trial court to terminate A.L.T.'s parental rights be terminated on endangerment grounds.

It is undisputed the abuse occurred when the children were in the father's custody and Plummer was the perpetrator. Appellant was living in Illinois or Iowa at the time. Therefore, in order to support the endangerment findings, there must be some evidence that appellant knowingly placed or knowingly allowed the children to remain in an environment which endangered their physical or emotional well-being. Alternatively, it

---

[8] The first paragraph of appellant's FSP shows Plummer physically assaulted the children on multiple occasions. (DFPS #7, p. 1)

27

must establish that she knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being.

There is no evidence in this record to establish that A.L.T. even knew Plummer; much less that she was aware Plummer was physically abusing her daughters. Similarly, there is no evidence to show that she knew the conditions in which the children were living at the time of removal.

The record is also silent as to her relationship with the father. Again there is no evidence that she knew or could predicate that he would fail to protect their children. In fact, the paternal grandmother allowed him to take his daughters to Texas. Certainly, if she were aware that he would not protect them, DFPS would not have placed them with her in May.[9]

The two positive drug test results can be considered in determining whether a parent has engaged in endangering conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009)(Drug use and its effect on the ability to parent can be part of an endangering course of conduct). Nevertheless, on the face of this record, the evidence of drug use is not so convincing as to support the endangerment findings.

The drug test results from hair samples collected on October 16, 2013 and November 20, 2015 indicate mother tested positive for cocaine and marihuana on both tests. She was negative for all drugs on the urine samples. At the time the samples were collected the children were already in DFPS custody. There was no evidence that

---

[9] Although not admitted into evidence, the clerk's record contains the approved ICPS home study on the paternal grandmother. (CR 66-85)

A.L.T. ever used illegal drugs in the presence of the children.

Most importantly, no expert testified at trial to explain the significance of the result. For instance, do they mean mother ingested cocaine or was she merely exposed to it? Did she use it once or on multiple occasions; in what quantities and how long before the samples were collected. Without the benefit of any expert testimony the fact finder is unable to determine what weight should be given to the positive hair sample results, particularly when there are negative urine results. Simply stated, the hair follicle results standing alone do not establish that appellant engaged in a continuing course of conduct.

Neither DFPS nor the children's ad litem provided any evidence to place the positive drug results in context. The fact finder does not know when the children first began to live with the grandmother or when the father brought them to Houston. When and if the children lived with the mother is also a mystery. What conditions they lived in before coming to Houston is similarly unknown.

In conclusion, the only evidence supporting the endangerment findings consists principally of appellant's two positive drug tests from hair samples collected at the beginning of the case. Nevertheless, the record does not provide any context as to how appellant's two positive drug tests exposed the children to danger. Involuntary termination statutes are construed strictly in the favor of the parent and DFPS is required to "support its allegations against [appellant] by clear and convincing evidence; conjecture is not enough." *In re E.N.C.*, 384 S.W.3d at 802, 8110 (Tex. 2012) Therefore,

29

based on the speculative nature of the scant evidence pertaining to the endangerment findings, appellant's second point of error should be sustained.

ISSUE THREE:   WAS THE EVIDENCE LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS UNDER §161.001(1)(N)

Applicable Legal Standard:

To support termination of parental rights under subsection N, DFPS is required to prove that (1) the parent has constructively abandoned the child who has been in the permanent or temporary conservatorship of the Department or an authorized agency for not less than six months; (2) the department or authorized agency has made reasonable efforts to return the child to the parent; (3) the parent has not regularly visited or maintained significant contact with the child; and (4) the parent has demonstrated an inability to provide the child with a safe environment. §161.001(1)(N)

Under this subsection if the evidence is legally insufficient on any one of the four elements, the termination finding cannot be sustained. *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App. – Ft. Worth 2000, pet. denied) Moreover, the party seeking the termination of parental rights bears the burden of proof under §161.001(1)(N). *In re A.S.,* 261 S.W. 3d at 90

The Evidence:

The relevant evidence relating to subsection N grounds is as follows:

Mills agreed A.L.T. has not visited her children "consistently throughout the pendency of this case." She last visited around the end of July and, "before that she had not visited them in a long time." (RR p. 9)

Mother moved to Iowa. For that reason, she must pay for the services set forth in her FSP. (RR p. 14)

As far as Mills knows, appellant has not provided any support for the children. She was making court appearances at the beginning of the case. Mills did not remember the Judge saying that "due to family restraints (sic)" mother was excused from attending court hearing. (RR p. 10-12)

Mills is "not sure" if appellant is "not well off financially." She last spoke to her around August 20th and advised her of the September 2nd trial date. Mother said she "could not make it because of her job." (RR p. 13-14)

Analysis & Argument:

Under subsection (N), DFPS bears the burden of proving by clear and convincing evidence that appellant had not visited or maintained significant contact with her children. Nevertheless, the evidence establishes she did maintain contact.

Mills agreed with her trial counsel's conclusory statements that A.L.T. has not visited her children "consistently throughout the pendency of this case" and "before that she had not visited them in a long time." The trial took place on September 2, 2014 and Mills testified mother last visited the children around the end of July. In addition, Mills spoke to her as recently as August 20th. When mother told her she could not attend the trial due to work.

Thus, Mills' testimony shows appellant did not constructively abandon her children. *In re K.W.*, 138 S.W.3d 420, 432-33 (Tex. App. – Ft. Worth 2004, pet.

denied)(holding that parent's correspondence with caseworker demonstrated he had not constructively abandoned his child under subsection N) and *In re D.W.*, No. 01-13-00880-CV (Tex App. – Houston [1st Dist.] April 11, 2014, no pet.)(memo op.)(holding evidence insufficient under subsection N where trial in September and caseworker testified appellant maintained contact with her from March to July of same year)

The evidence is also insufficient to show that DFPS made reasonable efforts to reunite the children with their mother or that she has demonstrated an inability to provide the children with a safe environment.

Generally, DFPS can prove it made reasonable efforts to return the child to the parent element by the implementation of a family service plan. *Liu v. DFPS*, 273 S.W.3d 785, 795 (Tex. App. – Houston [1st Dist.] 2008 no pet.)(a family service plan is designed to reunify a parent with a child who has been removed by DFPS)  However, in this case there is no evidence that mother received or understood the FSP.   DFPS would not pay for her services because she lives in Iowa.  There was no proof of the cost to complete the services; if they are available in Iowa; and, if A.L.T. could afford to pay for them.

Mills was "not sure" if appellant was "not well off financially." Beyond that statement there was no addition evidence A.L.T. demonstrated an inability to provide the child with a safe environment.  While Mills asked her to provide information regarding her finances, there was no evidence as to her ability to provide a safe environment for the children.   Mills only offered that appellant was working as a reason for not attending the trial.  See *In re D.T.*, 34 S.W.3d at 641 (noting caseworker's

32

statement that appellant had not shown she could provide stable home improperly reversed burden of proof)

In conclusion, the evidence does not legally or factually support the trial court's termination finding under subsection (N).

ISSUE FOUR: WAS THE EVIDENCE LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS UNDER §161.001(1)(O)

Applicable Legal Standard:

The Family Code provides that a court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has:

> Failed to comply with the provisions of a court order that specifically establish the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

§161.001(1)(O)

§262.201(b) provides that after the full adversary hearing the court must return the child to his parent unless it finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

(1) there was a danger to the child's physical health and safety that was caused by an act or failure to act of the person entitled to possession, and for the child to remain in the home is contrary to the welfare of the child;

(2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the child's safety, were made to eliminate or prevent the child's removal; and

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

A termination finding under subsection (O) cannot be upheld where there is no court order that specifically establishes the actions necessary for the parent to obtain return of the child. *In re: K.F.*, 402 S.W.3d 497, 501 (Tex. App. – Houston [14th Dist.] 2013, pet. denied)

Relevant Evidence:

Appellant's FSP was admitted into evidence without objection. It was filed on November 12, 2013 and signed by Mills on October 31, 2013. It was not signed by A.L.T. (DFPS #7)(CR 36-42)

Mother's attorney ad litem filed her original answer on November 20, 2013. (CR 28-29)

The trial court took judicial notice of all orders in its file. (RR p. 9; L. 12-15) The clerk's record contains three permanency hearing orders ("PHO") but no order that specifically states the actions A.L.T. must complete to be reunited with her children.

The first PHO dated February 19, 2014 recites, in relevant part, the following boilerplate language:

IT IS ORDERED . . . the permanency plans for the children, set out in the service plans and/or Permanency Progress Reports filed with the Court, are approved and adopted by this Court and incorporated herein as if set forth verbatim in this order. The actions specified in each service plan and/or Permanency Progress Report on file as of the date of this order represent actions which this Court requires of the parent specified in the service plan and/or Permanency Progress Report and the actions much (sic) be performed in order for the parent to regain custody of the children who are presently in the temporary managing conservatorship of the Department.

It further recites that appellant was not present. (CR 62-65)

The second PHO signed on June 11, 2014 contains the same boilerplate language and recites that appellant was not present. (CR 86-89) The last PTO was signed on the date of the trial, September 2, 2014.

DFPS removed the children from the father's custody due to physical abuse inflicted on them by his girlfriend. He brought them to Houston from Chicago.

Mills agreed appellant "failed to complete her services" but completed "one of the things." She has not received "any indication [mother] has completed any other services." She further agreed A.L.T. has not visited her children "consistently throughout the pendency of this case" although she last visited around the end of July. Mother was making court appearances at the beginning of the case.

Mills asked the court to terminate mother's parental rights "based on her failure to do services." and to the best of her knowledge, mother has not provided any support for the children. (RR p. 10)

Mills is "not sure" if appellant is "not well off financially." She repeatedly asked her to send information about her finances. Mother sent the certificate showing completion of parenting classes. Mills last spoke to her around August 20th and advised her of the September 2nd trial date. Mother said she "could not make it because of her job." (RR p. 13-14)

DFPS sought to terminate mother's rights as opposed to "PMC and things like that" because she did not complete "all the courses;" moved to Iowa; and "initially

35

tested positive for drugs" in October 2013. DFPS has no later drug tests because appellant is in another state. Because appellant resides out-of-state she must pay for her own services. (RR p. 14)

Appellant and her children were born in Chicago, Illinois. There is no evidence that she ever resided in Texas. (DFPS #2)

The removal affidavit ("affidavit") shows the children were removed from the father because his girlfriend, Plummer, was physically abusing them. It further states "[A.L.T.] . . . resides in Chicago which is where [A.L.W. and A.N.W.] came from." The father "went and got them from Chicago" which is the reason they no longer reside with mother. Plummer at first said they were in the father's care due to abuse by A.L.T. However, she then stated they are "special needs children ans as to their reports of abuse, they don't know what they are talking about." (CR p. 23 & 25)

Plummer has an extensive CPS and criminal history. In contrast, the affidavit states mother has no criminal history and no CPS history was reported. (CR 25-27)

Argument & Analysis

Appellant argues that the subsection (O) finding should be reversed for several reasons. First, the evidence does not meet the clear and convincing standard to prove that the children were not removed from A.L.T. or even the father due to abuse or neglect. Secondly, the evidence is legally insufficient because the record does not contain a court order that specifically establishes the actions necessary for A.L.T. to take in order to obtain the return of her children; and, finally, the evidence is factually

36

insufficient because a rational fact finder could not form a firm conviction or belief that DFPS meet its burden of proof under this subsection.

Removal From A.L.T. Due to Abuse or Neglect:

Involuntary termination statutes must be "strictly construed" in favor of the parent and due process "commands that courts apply the clear and convincing evidentiary standard" in such cases. *In re E.N.C.*, 384 S.W.3d at 802, 809  Subsection (O) includes a specificity requirement and DFPS is required to "support its allegations against [appellant] by clear and convincing evidence; conjecture is not enough." *In re D.N.*, 405 S.W.3d 863, 878-79 (Tex. App. – Amarillo 2013, no pet.)(citing *In re E.N.C.*, 384 S.W.3d at 810)

Proof of abuse or neglect is a required element of subsection (O).  However, it is not require that the parent who failed to comply with the court order be the same person whose abuse or neglect of the child warranted the child's removal. *In re S.N.*, 287 S.W. 3d 183, 188, 190 (Tex. App. – Houston [14th Dist.] 2009, no pet.) The words "abuse" and "neglect" are interpreted broadly to necessarily include risks or threats of the environment in which the child is placed.  The removal "affidavit, even if not evidence, for all purposes, can be considered in determining whether removal was justified." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013)

Whether a child was removed for abuse or neglect must be determined on a case-by-case basis. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App. – Houston [1st Dist.] 2008 pet. denied)

It is clear that subsection (O) only applies if the child was removed from the parent for abuse or neglect under chapter 262. The Supreme Court decided that abuse or neglect includes "placing the child's physical health or safety at *substantial* [emphasis added] risk." The parent's abuse or neglect of another child who is not the subject of the case can be considered in making this determination. Specifically, the court held that the affidavit and subsequent finding by the trial court authorizing the child's removal were sufficient evidence to establish, as a matter of law, the child was removed under chapter 262 for abuse or neglect. *In re E.C.R.*, 402 S.W.3d at 249

Here, however, the affidavit and trial evidence conclusively establish that the children were removed from the father and Plummer due to physical abuse. The affidavit notes that mother lives in Chicago and has no criminal or CPS history. There is no evidence that she abused or neglected any child.[10]

At the full adversary hearing, §262.201(b) provides the court must return the child to his parent unless the court finds, inter alia., there was a danger to the child's physical health and safety that was caused by an act or failure to act of the person entitled to possession, and for the child to remain in the home is contrary to the welfare of the child. The burden of proof is less than clear and convincing; i.e. sufficient evidence to satisfy a person of ordinary prudence and caution.

While appellant found several cases where the removal affidavit and trial court's

---

[10] Although Plummer stated the children were living with her and the father because they were abused by A.L.T., she then said they were residing with her because of their special needs. Given her extensive criminal and CPS history as well as her denial that she abused the children, a reasonable fact finder could not find her conclusory statement credible. (CR p. 25)

§262.201(b) findings were sufficient to support the subsection O finding that the child was removed for abuse or neglect, there was at least some evidence that the parent posed a "substantial" risk to the child. For instance, in *E.C.R.*, the affidavit revealed mother had physically abused any older child that resulted in criminal charges; none of her children were in her care and she attempted suicide while in the county jail. *Id.* at 241 See also, *In re A.A.A.*, 265 S.W.3d at 516 (mother left child at shelter, committed a crime and did not look for child upon release from county jail) and *In re J.R.W.*, No. 01-14-00442-CV, (Tex. App. – Houston [1st Dist.] Nov. 26, 2014, (no pet.)(memo.op.)(at adversary hearing mother admitted testing positive for marihuana, benzodiazepines and opiates when child born and smoking marihuana the day he was born)

In sum, the allegations made in support of removal were based solely on allegations of abuse committed by Plummer and father's neglect in failing to stop the abuse. Therefore, no reasonable fact finder could form a firm belief of conviction that the children were removed from appellant for abuse or neglect and the subsection (O) finding must be reversed.

Sufficiency of Evidence:

The subsection (O) finding should also be reversed because there is no court order in the record that specifically establishes the actions necessary for a parent to obtain the return of their child then a termination finding under subsection (O) cannot be upheld. Proof of such an order is an essential element of subsection (O) that the State must prove by clear and convincing evidence. *In re C.L.*, 304 S.W.3d 512, 514 (Tex. App. – Waco

2009, no pet.)

Here the court took judicial notice of all orders in its file. The file contains two PHO's dated February 19, 2014 and June 11, 2014 that recite the FSP's are "approved and adopted by the court and incorporated herein as if set verbatim in this order." Mother was not present at either permanency hearing and transcripts of those hearings were not admitted into evidence at trial. Her FSP was admitted into evidence. (DFPS #7)

Mills testified only broadly regarding what services the FSP required appellant to complete. Her responses to leading questions posed by DFPS counsel established that mother failed to "complete her services" except for one; presumably the parenting classes because Mills received a certificate of completion. Mills has not received "any indication [mother] completed any other services."

Mills stated A.L.T. has not visited the children regularly but acknowledged she visited in late July. She advocate terminating A.L.T.'s parental rights because she did not complete "all the courses;" moved to Iowa; and "initially tested positive for drugs" in October 2013.

Typically, the record contains a status hearing order that approves and orders the FSP. Again, subsection (O) includes "a specificity requirement." The fact that the two PHO's reference another order that might satisfy subsection (O)'s specificity requirement is not sufficient to meet the clear and convincing evidence burden.

40

However, even assuming the record contained such an order, Mills' testimony also fails to meet the required evidentiary burden. She merely stated appellant "failed to complete her services" and then agreed she completed her parenting classes. Yet there is no testimony regarding what specific services she failed to complete. Only Mils conclusion that she "failed to complete services."

The FSP states that for the psychosocial assessment, the random drugs tests, and the drug/alcohol evaluation the provider was supposed to contact A.L.T. Again there is no evidence this was done. Mills testified that because appellant lives out-of-state DFPS would not pay for her services. The record shows the court found her to be indigent. How she would pay for those services and their availability in Iowa are unknown. Similarly, how any indigent parent living in Iowa could attend "all Permanency Conferences, Court Hearings, scheduled family visits with her children" remains a mystery. (DFPS #7, p. 3-4)

In sum, the evidence supporting the subsection (O) finding is based on nothing more than Mills' conclusory statements. Therefore, appellant's point of error should be sustained.

ISSUE FIVE: WAS THE EVIDENCE LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE BEST INTEREST TERMINATION FINDING

### Applicable Legal Standard

DFPS must prove by clear and convincing evidence that termination of appellant's parental rights is in the child's best interest. §161.001(2)

There is a strong presumption that the child's best interest is served by keeping the child with the natural parent. *In re R.R.*, 209 S.W. 3d 112, 116 (Tex. 2006) DFPS has the burden of rebutting this presumption by presenting clear and convincing evidence of the natural parent's present unfitness. *In re C.J.S.*, 383 S.W.3d 682, 691 (Tex. App. – Houston [14[th] Dist.] 2012, no pet.) The same evidence may be probative of both §161.001(1) grounds and best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002) Nevertheless, the best interest determination must have a firm basis in facts standing apart from the offending behavior. *In re S.R.L.*, 243 S.W. 3d 232, 235 (Tex. App. Houston [14[th] Dist.] 2007, no pet.)

In *Holley v. Adams,* 544 S.W. 2d 367 (Tex. 1976), the court identified nine nonexclusive factors to consider in determining whether termination of parental rights is in a child's best interest. Those factors are: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) any emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals seeking custody to promote the best interests of the child; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate that the existing parent-child relationship is improper one; and (9) any excuses for the parent's acts or omissions.

The *Holly* factors are not exhaustive. The absence of evidence pertaining to some of the factors will not preclude a termination finding on best interest grounds. However,

scant evidence relevant to each *Holly* factor will not support such a finding. Evidence proving on or more of the predicate grounds for termination may be probative in determining if termination is in the child's best interest. *In re C.H.,* 89 S.W.3d at 27-28 A lack of evidence pertaining to one of the factors cannot be used as if it were evidence supporting a termination finding. *In re E.N.C.* 384 S.W.3d at 809 (Tex. 2012) The appellate court reviews the entire record in deciding a challenge to the court's best interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013)

In cases where a governmental agency is the petitioner §263.307(a) states "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." §263.307(b) provides a list of factors to consider in determining whether a parent is willing to provide the child with a safe environment. *In re G.M.G.*, 444 S.W.3d 46, 55 (Tex. App. – Houston [14th Dist.] 2014, no pet.)

Analysis & Argument

The record in this case is silent as to most of the *Holly* and §263.307(b) factors. As with the evidence supporting the predicate termination findings it consists mainly of Mills' conclusions and opinions.

To recap, the children have been living with the paternal grandmother in Chicago since May 28th and are "very well there." Mills opined it is in their the best interest to terminate mother's parental rights because she "has not shown the stability to care for the children" and "they're in an adoptive placement" that is "willing to provide them a safe and stable home free of physical abuse." She further agreed with the ad litem that

43

"they've lived with [grandmother], basically, their entire lives;" they want to be there; they consider her their mother; and, they "have a relationship with their mom."

Mother tested positive for marihuana and cocaine in October and November 2013.

Mills' testimony provides no facts to support her opinions. *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013)("Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence . . . conclusory testimony cannot support a judgment.")

To mention but a few of the relevant factors the proponents of termination failed to address: What dates did the children live with the grandmother and/or mother; what needs do they have; what plans do the grandmother and/or mother have for them in the future, what parenting skills do they have; what programs are available to assist them. Perhaps most importantly, what are the children's desires with respect to permanently severing the parent-child relationship? There is no evidence in the record that the ad litem ever spoke with the children. In effect, the children's desires, needs, current living conditions, and aspirations are unknown. Indeed, in this record, even their names are missing. Like appellant they lacked an effective advocate at trial.

Mother tested positive for cocaine and marihuana in the beginning of the case. However, as noted above, there was no expert evidence to put the drug use in context or an explanation of how the drug use exposed the children to danger, particularly when the children were not living with her. *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App. – Ft. Worth 2007, no pet.)("a parent's drug use also supports a finding that termination of

44

parental rights is in the child's best interest")

In mother's favor, there is no evidence that she has any CPS or criminal history. She completed her parenting classes and was employed.

In conclusion, the evidence in support of the best interest termination finding is insufficient. *In re E.N.C.*, 384 S.W.3d at 809 ("due process command that courts apply the clear and convincing evidentiary standard in parental rights termination cases.")

<u>PRAYER</u>

Appellant, A.L.T., prays that the Court reverse the judgment terminating her parental rights to A.L.W. and A.N.W. Appellant prays for general relief.

Respectfully submitted,

/s/ william m thursland

_____
William M. Thursland
TBN: 20016200
440 Louisiana St., Ste. 1130
Houston, TX  77002
Email: wmthursland@hotmail.com
Tel.: (713) 655-0200 x 105; Fax: (713) 655-9035

Attorney for Appellant, A.L.T.

CERTIFICATE OF COMPLIANCE

I certify that the foregoing computer generated brief complies with word limit requirements of TRAP 9.4 (3). Relying on the word count of the computer program used to prepare this document, the number of words, is 11,383 excluding the caption, identify of parties and counsel, table of contents, index of authorities, statement of the case, statement of issues presented, statement of procedural history, signature, proof of service,

certificate of compliance and appendix.

/s/ william m thursland

_____
William M. Thursland

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing brief was served on May 10, 2015 on appellee's counsel, Sandra D. Hachem. Sr. assistant Harris County attorney, 1019 Congress, 16th Fl., Houston, TX 77002, by electronic delivery.

/s/ william m thursland

_____
William M. Thursland